OPINION OF THE COURT
Stephen Smyk, J.
In this action for a declaratory judgment construing CPL 460.70 (subd 1) and for certain associated injunctive relief, defendants have moved to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars 2, 7) on the grounds that the court lacks jurisdiction of the subject matter of plaintiff’s cause of action, and that the complaint fails to state a cause of action against defendants. The court subsequently con *352 verted these to motions for summary judgment pursuant to CPLR 3211 (subd [c]).
After a jury trial held on August 5 and 7, 1981, plaintiff was convicted of operating a motor vehicle with more than .10 of 1% of alcohol in his blood in the Town Court of the Town of Kirkwood, County of Broome. Subsequently, plaintiff filed a timely notice of appeal, submitted an affidavit of errors, and obtained a stay from the appellate court, the County Court of the County of Broome.
The proceedings in the Town Court were recorded by a stenographer who prepared a transcript of the trial and presented a bill in the amount of $1,224.35 to plaintiff’s counsel for the transcription. Plaintiff did not pay the bill and the stenographer did not file the transcript with the Town Court.
Subsequently, the County Court informed plaintiff of his obligation to make arrangements to pay for the transcript and stated that the appeal would be dismissed for failure to prosecute if such arrangements were not made by a certain date. Prior to the expiration of the time permitted, plaintiff commenced this action and obtained a temporary order restraining the County Court from dismissing plaintiff’s appeal and from ordering him to pay the cost of the transcript.
Essentially, plaintiff is challenging the positions taken by the County Court, defendant the Honorable Robert W. Coutant, and the Town Court, defendant the Honorable Lloyd W. Merritt, regarding who is responsible for the cost of the transcripts prepared pursuant to CPL 460.70. Plaintiff has included the Office of Court Administration (OCA) as a defendant because the position of the County Court was based, at least in part, upon an internal memorandum prepared by OCA’s counsel, Paul Feigenbaum. The memorandum interpreted CPL 460.70 (subd 1) to require nonindigent defendants in criminal actions to pay the full cost of preparing the two transcripts required for perfection of an appeal to an intermediate appellate court. In his complaint, plaintiff alleges that the Town Court has improperly refused to pay for and file the transcript of his trial, that the County Court has improperly conditioned the perfection of plaintiff’s appeal upon payment of the tran *353 script costs, and that OCA has improperly interpreted CPL 460.70 in advising County Court on this issue.
With regard to the issue of subject matter jurisdiction, the court concludes that the complaint should be dismissed as a matter of law only to the extent that it seeks declaratory relief against defendant OCA. In an action for declaratory relief there must be a genuine legal dispute, a “justiciable controversy”, between the parties, and declaratory relief will not be granted where it will result only in an advisory opinion. (New York Public Interest Research Group v Carey, 42 NY2d 527, 529-530.) Here, there is no genuine controversy between plaintiff and defendant OCA. Plaintiff’s only dispute with OCA is the differing interpretations of the law. The Office of Court Administration clearly has no power to either impose conditions upon the perfection of plaintiff’s appeal or require plaintiff to pay for the transcript. Defendant OCA was acting as legal counsel to County Court in rendering a legal opinion as to the meaning of the statute as applied to all defendants in criminal cases. This opinion has no legal force and is not binding either upon plaintiff or upon County Court. A declaratory judgment concerning the memorandum prepared by OCA would be merely an advisory opinion evaluating the accuracy of the statutory interpretation and would not determine any justiciable controversy between the parties. (See New York State Assn. of Ins. Agents v Schenck, 72 Misc 2d 434, 435, affd 44 AD2d 757.) Therefore, the court is without power to grant such relief. (See Walsh v Andorn, 33 NY2d 503, 507.)
With regard to the issue of whether plaintiff’s complaint states a cause of action against the remaining defendants, the dispute between the parties can be reduced to the question of whether plaintiff or the Town Court is responsible for the cost of the transcripts statutorily required for perfection of an appeal by CPL 460.70. Since subdivision 1 rather than subdivision 2 of CPL 460.70 governs the way in which plaintiff’s appeal is to be perfected when the proceedings are recorded by stenographer (see CPL 460.10, subd 3), and since the material facts are undisputed, the determination of the motions to dismiss and of plaintiff’s right to the relief requested in the complaint turns upon *354 the construction to be given to the second paragraph of CPL 460.70 (subd 1). The second paragraph states: “When an appeal is taken by a defendant pursuant to section 450.10, two transcripts shall be prepared and settled, one of which shall be filed with the criminal court by the court reporter, except that where the defendant is granted permission to proceed as a poor person by the appellate court, the court reporter shall promptly make and file with the criminal court two transcripts of the stenographic minutes of such proceedings as the appellate court shall direct. The expense of transcripts prepared for poor persons under this section shall be a state charge payable out of funds appropriated to the office of court administration for that purpose. The appellate court may where such is necessary for perfection of the appeal, order that the criminal court furnish one of such transcripts to the defendant or his counsel.” This language was added by chapter 695 of the Laws of 1977, effective September 1, 1977. Statutory construction is necessary because this paragraph requires the preparation of two transcripts in all cases where, as here, the appeal is taken by a defendant pursuant to CPL 450.10, but does not explicitly state who is responsible for the expense of such transcripts where the defendant has not been granted permission to proceed as a poor person.
The court has reached a construction of the second paragraph by reasoning from extrinsic circumstances, laws and writings bearing on the statute and connected matters, and by applying the probable purpose of the statute to the issue of who must pay for the transcripts required by CPL 460.70 (subd 1). (See Rankin v Shanker, 23 NY2d 111; 2525 East Ave. v Town of Brighton, 33 Misc 2d 1029, affd 17 AD2d 908.) The language of the statute prior to the 1977 amendment, the legislative history of the amendment, the initial interpretation of the amendment, and the accepted practices under the amendment all shed light on the issue , of who must pay.
Prior to the 1977 amendment, the second paragraph provided: “When an appeal is taken by a defendant pursuant to section 450.10, the criminal court in which the judgment, sentence or order being appealed was entered or imposed must, within two days after the filing of the notice *355 of appeal therein, direct the stenographer to make and to file with the court, within twenty days, two transcripts of the stenographic minutes of the proceedings constituting the record on appeal. The expense of such transcript is a county charge or city charge, as the case may be, payable to the stenographer out of the court fund, or out of the juror’s fund or out of any other available fund, upon the certificate of the criminal court. The appellate court may where such is necessary for perfection of the appeal, order that the criminalfcourt furnish one of such transcripts to the defendant or his counsel.” This language was added by chapter 996 of the Laws of 1970 at the time the Code of Criminal Procedure was replaced by the Criminal Procedure Law.
Thus, prior to its amendment in 1977, the second paragraph required the “automatic” preparation of two transcripts at public expense within 22 days after the filing of a notice of appeal. (See Bellacosa, Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 460.70, 1981-1982 Pocket Part, p 155.) Although these transcripts were to be prepared regardless of the economic status of the defendant, the last sentence of the paragraph permitted a needy defendant to obtain one of the two filed transcripts by application to the appellate court. (See People v Shenandoah, 81 Misc 2d 316, 318-319.)
This earlier version of the second paragraph was included as a part of the Criminal Procedure Law when that law was enacted in 1970 (see L 1970, ch 996), but its origins in the Code of Criminal Procedure can be traced back to 1911. In that year, section 456 of the Code of Criminal Procedure was amended to direct the preparation and filing of one transcript with the trial,court, as the “minutes of the court of the trial,” at public expense within 10 days after the service of notice of appeal in noncapital criminal cases. (See L 1911, ch 667.) The Court of Appeals made it clear that this transcript requirement was designed to provide the trial court with a copy for its own use and did not give a court the inherent power to supply a copy of the transcript at public expense to a defendant in a noncapital case. (See Moynahan v City of New York, 205 NY 194, 197.) In 1916, the filing of one copy within 10 days of the service of a notice of appeal was extended to all *356 criminal cases. (See L 1916, ch 230.) This requirement continued until 1962.
Despite the fact that the courts of New York had furnished copies of transcripts to indigent defendants as early as 1885 (see People v Willett, 1 How Prac [NS] 196), no statutory or constitutional provision made a free copy of the transcript available to an indigent defendant prior to April 29, 1962. (See People v Teams, 38 Misc 2d 328.) In 1962, section 456 of the Code of Criminal Procedure was amended to explicitly empower the trial and appellate courts to provide an indigent defendant with a copy of the transcript. (See L 1962, ch 889, eff April 29,1962; see, also, People v Williams, 45 Misc 2d 870.) The amendment increased to two the number of transcripts prepared and filed so that one transcript could be furnished to an indigent defendant and one could be retained by the trial court. The trial court needed to retain one transcript because it had to be incorporated into the judgment-roll and forwarded to the appellate court. (See Code Crim Pro, § 485; see, also, Eighth Ann Report of NY Judicial Conference, NY Legis Doc 1963, No. 91, pp 12-13 [describing the purpose of the 1962 amendment].)
Section 456 of the Code of Criminal Procedure, as amended in 1962, was incorporated into CPL 460.70 with little modification. Thus, from 1916 to the effective date of the 1977 amendment, the applicable statutory language dealt exclusively with transcripts prepared at public expense and filed with the trial court whether or not the defendant was indigent. It was reasonable that the expense of these transcripts be borne by the public because the transcripts were provided for the use of the trial court and not for the benefit of the defendant, unless he was given access to a filed transcript on the basis of his indigency. (See Moynahan v City of New York, 205 NY 181, 188.)
The two-transcript requirement introduced in 1962 and carried over into the original second paragraph of CPL 460.70 (subd 1) had one inherent weakness: it required the preparation of two transcripts in all cases where a notice of appeal had been filed without regard to whether or not they would ever be used by the court or an indigent defendant. The wastefulness of preparing two transcripts, *357 in cases where the transcripts were not needed because the defendant was not indigent, or never used because the appeals were not perfected, became so manifest that one court simply refused to direct compliance with the statute. (See Matter of Cooper v Criminal Ct. of City of N. Y., 71 Misc 2d 367.) It was this waste of time and money upon unnecessary transcripts that led the Advisory Committee on Criminal Law and Procedure to call the two-transcript requirement “[o]ne of the major flaws in the criminal appellate process” in its 1977 annual report to the Judicial Conference. (See Twenty-Second Ann Report of NY Judicial Conference, NY Legis Doc, 1977, No. 90, p 318.)
To alleviate the burden imposed by the statute, the advisory committee recommended legislation limiting the number of transcripts produced to those actually needed for adjudication of an appeal. (Id., p 318.) The committee concluded that one transcript need be prepared at public expense only in those cases where the defendant is accorded poor person status and that no transcripts need be prepared at public expense where the defendant has not been accorded such status. (Id., pp 319, 321.)
Virtually all of the memoranda constituting the legislative history of the 1977 amendment reflect the problem and proposed solutions as set forth in the committee’s report. (See, e.g., OCA memorandum to Assembly Bill No. 6734, dated June 6, 1977, pp 1-2; memorandum of Robert Schlanger, Division of Criminal Justice Ser vs., dated July 28, 1977.) Those proposals were incorporated into Assembly Bill No. 6734, introduced on March 14, 1977. This original bill limited the number of transcripts prepared for indigent defendants to one (Assembly Bill No. 6734, lines 18-21) and explicitly required nonindigents to “cause the transcript to be prepared and settled in accordance with rule 5525 of the civil practice law and rules” (id., lines 17-18). Thus, the one and only transcript to be prepared at the expense of the public was the transcript prepared after the defendant had been granted permission to proceed as a poor person (id., lines 18-20). This transcript was to be filed and then copied as needed to supply the defendant, his counsel, or both (id., lines 27-30).
*358 If the Legislature had enacted Assembly Bill No. 6734 as originally proposed, there now would be no doubt that a nonindigent defendant would have to pay for the preparation of a transcript in order to perfect his appeal because the record on appeal would have been prepared at the expense of the defendant as in a civil appeal. (See CPLR 5525.) However, the Legislature amended Assembly Bill No. 6734 twice and did not eliminate all of the transcripts which the advisory committee had considered to be unnecessary. The bill as passed, No. 6734B, preserved the two-transcript requirement for all appeals and removed the explicit designation of who is to be responsible for the expense of the transcripts prepared when the defendant is not indigent.
In light of the legislative history and the language of the 1977 amendment, the court must conclude that the purpose of the legislation was to address the problem described by the advisory committee by partially reducing the number of transcripts prepared at public expense, while retaining the long-standing practice of filing one copy with the trial court.*
Since the amendment retained the two-transcript requirement, the Legislature implicitly determined that the transcript filed with the trial court was necessary and provided that two transcripts be prepared, but only one filed, where the defendant has not been accorded poor person status. This provision guaranteed the availability of the transcript needed by the nonindigent defendant in preparing the record on appeal, ¡i
Thus, the Legislature viewed the two transcripts as having separate end uses. Whether the defendant is indi *359 gent or not, one transcript is for the use of the trial court and one is for the defendant. If the Legislature had passed the amendment as originally proposed, the trial court would not have received a copy of the transcript unless the defendant was indigent. (See Assembly Bill No. 6734.)
The legislative purpose of reducing unnecessary transcripts prepared at public expense was to be effectuated, therefore, not by reducing the number of transcripts required, but by producing transcripts only when they are needed. Thus, the indigent first had to apply for permission to proceed as a poor person and then two transcripts would be prepared at public expense. (See OCA memorandum to Assembly Bill No. 6734, dated June 6, 1977, p 2.) In other words, the mere filing of a notice of appeal no longer, triggers transcript preparation and the defendant must take some further step evincing his intent to perfect his appeal. This additional threshold step serves to greatly reduce the number of cases where an appeal is taken, a transcript is prepared, but the appeal is not perfected. Without this additional step, the amendment would be wholly ineffective in reducing the time and money wasted on unused transcripts.
In order for this threshold step to operate for indigent defendants, there must be a comparable threshold step for nonindigents. If transcripts were automatically prepared for nonindigents upon the filing of a notice of appeal, no defendant would take the trouble of applying for permission to proceed as a poor person. The implicit threshold step for nonindigents must be the step of arranging for the preparation of a transcript at the defendant’s expense. The mere ordering of a transcript without a commitment to bear its cost would be ineffectual because defendants would routinely take this step realizing that they would not be bound to pay for the transcript unless they subsequently wished a copy for their own use. Therefore, the second paragraph implicitly requires a defendant either to make arrangements to purchase at least one copy of the transcript or to obtain permission to proceed as a poor person before the preparation of the two transcripts required by statute. However, there is nothing in the statute that requires the nonindigent defendant to pay for more than *360 one transcript, and it is quite reasonable to expect the public to bear the expense of the transcript filed with the trial court after the defendant had demonstrated his intention to perfect his appeal.
Since a nonindigent defendant, like the plaintiff in this proceeding, is not entitled to a copy of the transcript for his own use without charge (see Matter of Cooper v Criminal Ct. of City of N. Y., 71 Misc 2d 367, 368, supra), it is logical to assume that the Legislature expected the defendant to buy his own copy if he wished to perfect the appeal. If, as the advisory committee reported, a nonindigent defendant must purchase a transcript and prepare a record in the same manner as a civil litigant because the rules of the appellate court require it (see Twenty-Second Ann Report of NY Judicial Conference, NY Legis Doc, 1977, No. 90, p 319), then the Legislature was not increasing the financial burden upon the defendant by requiring him, rather than the public, to bear the expense of one transcript. However, if the second paragraph is interpreted to require the defendant to also bear the expense of the additional transcript filed with the trial court, then the 1977 amendment would shift the financial burden from the public to the individual defendant. There is nothing in the legislative history or the statute itself to suggest that the Legislature has decided to terminate the long-standing practice of furnishing the trial court with a copy of the transcript at public expense.
Up to this point, the court has not distinguished between appeals taken from County Court and those taken to County Court because CPL 460.70 (subd 1) applies to both types. (See CPL 1.20, subd 22.) However, it is important to recognize that these two types of appeals had been perfected in different ways for many years. Prior to the enactment of the Criminal Procedure Law, appeals to County Court were not governed by section 456 of the Code of Criminal Procedure. Instead, section 756 of the Code of Criminal Procedure mandated the preparation and filing of a return to all matters stated in the defendant’s affidavit of errors within 10 days of service of the affidavit. (See Code Crim Pro, § 756.) The basic provision of section 756 was added in 1895 (see L 1895, ch 880), but it's roots go back much earlier. (See 2 Rev Stat of NY [1st ed], part IV, *361 eh II, tit 3, § 46 [1829].) When a stenographic record was available, the local court was responsible for its transcription and transmission to the County Court as part of the return. (See People v Rochford, 50 Misc 2d 404; People v Collins, 38 Misc 2d 952; see, also, 14 Opns St Comp, 1958, p 442.)
Thus, historically, it has been the obligation of the trial court to prepare and furnish the record on appeal in appeals to County Court. Unlike appeals to the appellate divisions, the applicable rules mandate the transmission of one transcript from the local court to County Court rather than preparation of a record by the appellant. (See 22 NYCRR 1302.5 [b] [2]; cf. 22 NYCRR 800.14; see, also, Code Crim Pro, § 763.)
As considered above, the 1977 amendment implicitly requires nonindigent defendants to pay for one transcript, and historically, the transcript filed with the trial court has been prepared at public expense. In rejecting the amendment as proposed by the advisory committee, the Legislature necessarily determined that the copy filed with the trial court could not be dispensed with. Since the legislative history indicates that the amendment was designed to eliminate unnecessary transcripts rather than just shift the expense to the defendant, the court concludes that the 1977 amendment did not change the public’s responsibility for the expense of the copy filed with the trial court.
In an appeal from a Town Court, the copy filed permits the trial court to review and settle the record, and upon transmission to the appellate court, the prosecutor is able to examine the record and prepare his response to the appeal. Thus, this transcript mainly serves the public interest in guaranteeing the accuracy of the transcript and in enabling the public prosecutor to respond to the appeal.
Therefore, the court construes the second paragraph to require a nonindigent defendant to order and make arrangements to pay for his own copy of the transcript, which is the copy prepared but not filed, and requires the public, in this case the town, to bear the expense of the copy which is filed. (See UJCA, § 2021.) Plaintiff must purchase one *362 copy of the transcript, whether or not he wishes to use it, in order to demonstrate his intent to prosecute the appeal. Once that intention is demonstrated, the Legislature has implicitly committed the public to pay for the other transcript because it is deemed to be necessary.
Accordingly, the motions to dismiss are denied and plaintiff is entitled to summary judgment declaring that plaintiff is obligated to order and pay for one transcript in order to perfect his appeal but that he is not responsible for payment for two transcripts. The expense of the second transcript would be a town charge.

 The Legislature continued this practice despite the absence of any'provision in the Criminal Procedure Law requiring the trial court to compile a judgment-roll and forward it to the appellate court, as had been required by section 485 of the Code of Criminal Procedure. (See Comm Staff Comment to GPL 460.70, reprinted in 7B NY Cons Laws Serv, CPL 460.70, p 139.) It was the necessity of one transcript for the appellate court and one for the defendant that led to the introduction of the two-transcript requirement in 1962. (See Eighth Ann Report of NY Judicial Conference, NY Legis Doc, 1963, No. 91, p 13.) With regard to appeals to_County Court, the Rules of the County Court for the Third Judicial Department still require the trial court to file one transcript with the County Court. (See 22 NYCRR 1302.5 [b] [2].)